NATHANIEL HOBART & another *vs.* EBENEZER T. ANDREWS.

Promissory notes made by A. to B., were indorsed by B. and pledged to C. as collateral security for payment of money due from B. to C.: A. failed, and assigned all his effects in trust for the benefit of his creditors ; said notes being among the preferred debts : B. afterwards failed, being indebted to A., as well as to others, and assigned all his effects, including " a balance in the hands of C.," in trust for the benefit of his creditors : The assignees of A. transferred the property, which was assigned to them, to other assignees, of whom C. was one, under the same trusts : C. and others, who were A.'s substituted assignees, reconveyed to A. all the property which he had assigned as aforesaid, on his paying the debts which were preferred in the original assignment, and a certain proportion of the other debts : B.'s assignees afterwards sold and conveyed to D. " a surplus of property pledged by B. to C., consisting of notes," &c. C. received from the effects of A. full payment of said pledged notes, whereupon there was a balance in his hands in favor of B. after payment of the demands which they were pledged to secure.
*Held,* on a bill in equity against C., that said balance should be paid by him to D. and not to B., nor to A., nor to A.'s last assignees.

THIS was a bill in equity, originally brought by Nathaniel Hobart to compel the defendant to render an account, and to pay over to him such sum as should thereupon be found due to him. Timothy H. Carter was afterwards made a party, as plaintiff, by order of the court. The facts of the case, so far as they relate to the point decided by the court, and hereinafter stated, appeared in the bill, answer, and master's report ; and were as follows : From 1829 to 1834, the defendant, at different

times, assisted Timothy H. Carter in raising money, by indorsing said Carter's notes, and otherwise, for which he received a commission, and was also protected by collateral security. Among other property, which was placed in the defendant's hands to secure him for liabilities incurred for Carter, were thirteen promissory notes made to said Carter by the firm of Carter, Hendee & Co. for value received, and indorsed by him.

On the 8th of May 1834, Carter, Hendee & Co. failed, and assigned their property, in trust for their creditors, to Samuel G. Goodrich and three others. In this assignment, the aforesaid thirteen notes, amounting to about $ 9700, were placed among the preferred debts of the assignors, being described as " held by E. T. Andrews, as collateral security." Timothy H. Carter was, at the same time, indebted to Carter, Hendee & Co. about $ 5000, which debt was assigned by them, with their other effects and credits, to said Goodrich and others, but was never paid by Timothy H. Carter.

On the 26th of May 1834, Timothy H. Carter failed, and assigned all his property, in trust for his creditors, to David L. Child and Richard B. Carter. Among other property thus assigned was " a surplus of property pledged to E. T. Andrews, consisting of notes of hand," &c. On the same day, Goodrich and others, the assignees of Carter, Hendee & Co., with the consent of the assignors, assigned all the property, so as aforesaid conveyed to them in trust, to said E. T. Andrews, Samuel P. Heywood, and Charles Bowen, to hold the same on the trusts in the original deed of assignment.

On the 1st of April 1837, the defendant rendered to said D. L. Child and R. B. Carter, assignees of Timothy H. Carter, his account current with said Timothy ; and on the 1st of May next after, said Richard B. Carter sold, and conveyed by deed, to Hobart, the plaintiff, all the right of said Child and Carter to a portion of the property assigned to them by T. H. Carter, among which was mentioned a " balance in hands of E. T. Andrews." This conveyance was afterwards confirmed by said Child.

On the 31st of May 1837, Bowen, one of the trustees of

Carter, Hendee & Co., gave notice to Andrews, the defendant, that if he had received from the effects of Carter, Hendee & Co. more than sufficient to pay his claims against T. H. Carter, he must account with their trustees for the balance.

On the 9th of June 1838, an indenture was executed by and between Richard B. Carter and Charles J. Hendee, (two of the firm of Carter, Hendee & Co.) and said Andrews, Heywood and Bowen, assignees and trustees as aforesaid, in which said assignees covenanted that they would assign and set over to said Richard B. and Charles J. all the moneys, goods, effects, credits, choses in action, &c., belonging to Carter, Hendee & Co , or in the hands of said assignees, as such, upon being paid therefor such sums as should liquidate and settle debts owing by said assignees, as such, and such further sums as would pay to the creditors who had signed the assignment of Carter, Hendee & Co., and were not preferred, ten per cent. on the principal sum of their demands ; the aggregate sum not to exceed $ 3400, and to be paid on or before May 15th 1839. And on the 6th of March 1839, pursuant to the covenant aforesaid, the remaining property of Carter, Hendee & Co. was delivered to said Richard B. Carter and Charles J. Hendee ; the guaranty of a third person being given to said assignees, that the terms of said indenture should be performed by said Carter & Hendee.

The full amount of the thirteen notes above mentioned was paid to the defendant from the assigned effects of Carter, Hendee & Co.

Several accounts of the transactions between the defendant and Timothy H. Carter were settled by said Carter and by his assignees. And the defendant, in his answer, relied on those settlements as conclusive. He also insisted, that on a final account of his said transactions, there was no balance, in his hands, due to said Carter : He further set forth in his answer, that if there were in his hands, on account of the money received by him on the aforesaid thirteen notes, any balance for which he ought to account, the same was due in equity, and ought to be repaid, to the trustees of the property of the firm of Carter, Hendee & Co., or to said Richard B. Carter and Charles J.

Hendee, and not to the plaintiffs or either of them ; and that said trustees, and said Carter & Hendee, both claim of the defendant, that such balance, if any, should be paid to them.

At March term 1840, the court ordered that a mutual account of all the dealings and transactions between said Timothy H Carter and the defendant (not included in certain accounts mentioned in the defendant's answer as settled) should be taken by a master, who, in taking such account, should make to the parties all just allowances : And that if there should appear to be any balance against the defendant, the master should inquire whether the same should be paid to the complainants or either of them, or to the persons, or either of them, who in said answer are mentioned as claiming the same.

The master, to whom the case was referred, stated an account, according to the order of court, in which the balance was against the defendant ; and he reported that said " balance ought to be paid to the complainant, Nathaniel Hobart." Several exceptions were taken, on both sides, to the master's report ; but the main question arose on the exception taken by the defendant to that part of the report which directed the balance to be paid to Hobart.

*B. Rand*, for the defendant.

*Fletcher & T. P. Chandler*, for the plaintiffs.

SHAW, C. J. It appears that before the failure of any of the parties, or any assignment, Timothy H. Carter, holding the business notes of Carter, Hendee & Co. given by them to him for a full and valuable consideration, had indorsed them to Andrews, as collateral security for moneys advanced by him to said Carter, or raised for the use of Carter, on the credit of Andrews's indorsement. Being notes given for value, and indorsed, Carter, Hendee & Co. were bound to pay the amount in full to the holder, whether the holder had or had not a claim to the full amount against the indorser ; and the obligation of Andrews was, to account for the surplus, if any — after his advances were paid and his indorsed notes taken up — with Timothy H. Carter. Upon this surplus, Carter, Hendee & Co. had no lien, and no claim of any sort, legal or equitable.

Suppose then it is true, as now claimed by the defendant, that at the time when Carter, Hendee & Co. made their assignment to trustees, in May 1834, of all their effects, Timothy H. Carter was indebted to them on account, in the sum of $ 5000 ; it was a personal debt, for which they had no security, and it passed, as a chose in action, to their assignees, Samuel G. Goodrich & others, and subsequently by assignment, from them to Bowen, Heywood and Andrews. They, as such assignees, had a claim, in the name of Carter, Hendee & Co. against Timothy H. Carter. But they had no means of charging it on the balance in the hands of Andrews, without some pledge or assignment of that balance by Timothy H. Carter ; and none such was made. Had the notes of Carter, Hendee & Co. to Timothy H. Carter been made without value received, for the accommodation of Timothy H. Carter, and by him pledged to Andrews to secure him for advances, then, as far as Andrews held for value, he could demand payment of the notes of Carter, Hendee & Co. ; but as to the surplus, not holding for value, he could not enforce payment, for the use and benefit of Timothy H. Carter ; because, as between him and the promisors, there was no real debt, and the holder could have no legal or equitable right to recover against them for his use, nor against their assignees, to whom their property had been assigned subject to the same equity. But they were not accommodation notes. They were negotiable notes given for value, duly indorsed so as to pass the whole property, and the indorsee and lawful holder of them was entitled to be paid in full ; and against such payment Carter, Hendee & Co., and their assignees, had no legal or equitable set-off in the debt due from Timothy H. Carter. Andrews, therefore, must recover the full amount of these notes, as against them, although such payment, with other funds, would place in his hands a surplus beyond what would be necessary to meet and reimburse his claims.

This surplus then, either actually existing, or depending upon the contingency of future collections, being in the hands of Andrews, without any lien thereon, or any equitable right of set-off, on the part of Carter, Hendee & Co., Timothy H. Carter had a

disposing power over it, and could assign it in equity, as against them, to any person. In this state of things, he did, in May 1834, make an assignment of property for the benefit of his creditors, and in that assignment included this surplus, in terms ; and the equitable right to it then vested in his assignees. It made no difference that Andrews, from whom the balance was to come, was one of the assignees of Carter, Hendee & Co. ; he was also a creditor, holding their notes, and had a right to recover the amount in full ; and when recovered, he was accountable over to Timothy H. Carter and his assignees, in the same manner as if the money had come from any other source.

Nor does it make any difference, that the payment of those thirteen notes was effected by means of a provision for their being preferred, in the trust assignment of Carter, Hendee & Co. That assignment was not, in the first instance, made to Andrews and others. Andrews was then a stranger to it ; and he and his co-assignees came in afterwards by an assignment from the first assignees. In making that assignment by Carter, Hendee & Co. to trustees for their creditors, it would have been competent for the parties to have limited the preference, therein provided for the thirteen notes held by Andrews, to such part of them as would be sufficient to pay and satisfy the demands of Andrews against Timothy H. Carter, and not have extended it farther. In that case, the creditors of Carter, Hendee & Co. would have had an equal share in the benefit of this surplus. But such limitation was not made. The notes were preferred in full, although they might be more than sufficient to pay Andrews. After the execution of that assignment, the time had passed for providing in it for any equitable set-off in favor of the creditors of Carter, Hendee & Co, by so limiting the preference, or otherwise.

It appears then, that at the time of T. H. Carter's assign-ment for the benefit of his creditors, he had a right to dispose of this surplus in the hands of Andrews, and that he did dispose of it ; and the only remaining ground relied upon is, that as Andrews afterwards became assignee of Carter, Hendee & Co. in trust for their creditors, he had the power to apply this surplus

to their use, and thus set it off against the claims of Timothy H Carter and his assignees upon himself. What superior equity had the creditors of Carter, Hendee & Co. to this, over that of the creditors of Timothy H. Carter, to enable Andrews thus to defeat their claim against him personally ? Suppose that the assignees of Timothy H. Carter had brought an action against Andrews, or a bill in equity for an account ; we do not perceive how he could have resisted that demand by showing that he and others had since become assignees of Carter, Hendee & Co., and as such, had a claim against Timothy H. Carter. He was but one of three assignees ; but had he been a sole trustee, it appears to us the result must be the same. His debt was due in his individual capacity ; his claim, merely as assignee and trustee for others. The demands, which he held, were held *en auter droit*, and seem not, therefore, the proper subject of a set-off, either legal or equitable. So, as it appears to us, it was understood by Andrews and his co-assignees ; and upon this principle they acted. Andrews himself never offered to bring that surplus into this trust fund ; and if the co-assignees did call upon him so to account for it, they did not persist in that claim, but, on the contrary, without relying on it, they closed this trust, settled with the creditors, and re-assigned the remaining effects to Carter, Hendee & Co. for their own use. Such is the effect of the provisional agreement of June 9th 1838, executed in 1839.

Carter, Hendee & Co. cannot claim this surplus, under their re-assignment, because it was no part of the effects, before transferred by them to their assignees. The debt of $ 5000, due from Timothy H. Carter to them, was originally assigned by them, and if this sum was not paid, in whole or in part, to the assignees, it was conveyed back to them by the re-assignment. But this gave them no claim to the surplus in the hands of Andrews. If therefore Andrews alone, or with the two other trustees, ever had a right of equitable set-off, or any power over this surplus, by refusing to pay the whole of the thirteen notes held by Andrews, under the trust for - preferring those notes, specifically or otherwise, yet they forbore to make that set-off, at

23 *

the only time at which they could make it, that is, whilst they remained such assignees and trustees. The right or power, if it existed at all, was personal to them, in consequence of the ac cidental relation, in which Andrews at one time stood, as debtor in his own right to T. H. Carter, and creditor as assignee. The power ceased when that relation ceased, and when the effects of Carter, Hendee & Co. assigned to them, (including the simple contract debt due from T. H. Carter,) was re-assigned. In whatever view, therefore, we consider it, we are of opinion that the right to this surplus passed to T. H. Carter's assignees, and from them, by subsequent conveyance, to Hobart, and that, as Hobart has deceased since the bill was filed, his administrator is entitled to a decree for the amount.